THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RICARDO RODRÍGUEZ GONZÁLEZ, Defendant and Appellant.

No. CR-70-82.     Decided May 7, 1971.

*Enrique Miranda Merced* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Rurico E. Rivera Rivera, Assistant Solicitor General,* for The People.

PER CURIAM: The prosecuting attorney filed informations against appellant for violation of §§ 6 and 8 of the Weapons Law, committed in Ponce on June 5, 1968.

A jury found him guilty of the violation of §´8 and he was sentenced to serve from two to four years in the penitentiary. He was likewise found guilty by the court of the violation of § 6 and sentenced to serve 18 months in jail.

Appellant maintains in this appeal that (1) the evidence introduced by the prosecuting attorney does not establish his guilt in both offenses, beyond a reasonable doubt, (2) it was an error to deny the motion for peremptory acquittal as to the violation of § 8 (felony) and in finding him guilty of said offense although the evidence for the prosecution did not establish beyond a reasonable doubt that defendant was carrying a weapon on a thoroughfare, and (3) the sentence of 18 months in jail for violation of § 6 of the Weapons Law does not lie.

Appellant is correct in his first assignment insofar as the verdict of conviction in the case for violation of § 8 is con-

cerned, which will make it unnecessary to consider the second assignment. As to said violation, and not as to the violation of § 6, the evidence for the prosecution does not establish appellant's guilt beyond a reasonable doubt.

Only one witness for the prosecution testified about the place where the facts occurred, that is, where the defendant carried and fired a pistol. He is witness Francisco Figueroa Ortiz. The latter being informed by his wife that Aurora Ríos k/a Lola, defendant's wife, had struck his automobile, he and his brother climbed into the damaged vehicle and went towards Mayor Street, towards the North, where they were able to catch up with Mrs. Ríos. When they overtook her they passed in front and Francisco made a signal for her to stop and parked in front of her, this lady struck his vehicle again in the rear. Francisco Figueroa Ortiz told her there: "Lola you have struck the car." She denied it and told him to talk with her husband. The Figueroa brothers went towards Lola's husband house and she followed them. When they arrived at appellant's house at the Ward Borinquen, Francisco Figueroa called him and he came out.

We shall recite what happened afterwards copying directly from the transcript of the evidence, since the evidence about the specific place where it is said that defendant illegally carried a pistol is quite confusing. Here are the only passages pertinent to this question which we extracted from Francisco Figueroa's testimony, italics ours.

"Towards where did you specifically go?

*Towards Richie's house.*

Where is it located?

At the Ward Borinquen.

At the date of the occurrence of these events did you live in the same ward?

Yes, sir.

What happened there?

I went there and then I called Richie; he came out, then I was, *I stopped in front of the house facing the street and then I*

told Richie that Lola had struck my car, then I gave him a paper which my brother gave me on the way; a paper where . . .

. . . . . . . .

WITNESS:

That is, during the time that I was following Lola my brother gave me a paper where Richie's license plates were written; *I arrived at the house and told him,* 'your wife struck my car and I have this paper with the license plates written down by my brother'; my brother wrote down the license plates of the car and he told my brother, 'we are relatives and attacking each other.' [Pp. 24–25.]

. . . . . . . .

WITNESS:

When he said those words, that the family were attacking each other, he put the paper which I had given him in the back pocket of his pants; I told him 'I need the paper in case you do not fix the car to go to the Police.'

Did you request him to return the paper to you?

*Yes, sir, then he took out the pistol . . .*

From where did he take out the pistol?

*From the waist.*

How was that pistol?

One of those, a long black barrel German pistol.

A long black barrel German pistol?

Yes, sir.

From where did you say that he took it out?

From the waist.

What did he do, if anything, with that?

What did you say?

What did he do with it?

Well, he aimed at me with the pistol, then with the other hand he grabbed me by the neck, he hit me on the neck, on the right side.

PROSECUTING ATTORNEY RUIZ:

How?

WITNESS:

He hit me with the other hand.

Where?

Around here.

On the neck?

(The witness makes an affirmative motion with his head.)

What happened?

*When I saw what he did to me I ran to the street,* I and my brother, then he threatened us with the pistol, then he told me, well, that I was inferior to him in fist fights, then he told me that if I wanted to fist fight with him; then I told him that I was going to, when I was getting ready to fist fight, he grabbed a piece of stick to hit me with it.

Who?

Richie.

What did he do with the *pistol meanwhile?*

*He gave it to Lola.*

Ah?

He gave it to Lola.

PROSECUTING ATTORNEY RUIZ:

She is his wife?

WITNESS:

She is Richie's wife. When he swung the stick at me, my brother, who was nearer, hit him on the neck, on the head, and my brother was able to avoid the stick, and grabbed it and Richie, as my brother was stronger, bit him on the chest, and also a finger; then during that span of time while Richie and my brother were fighting, Lola was aiming at me with the pistol.

What do you say?

That during the time that Richie was fighting with my brother, Lola was aiming at me with the pistol.

Aha, go on.

Well, then, while she was aiming at me with the pistol and my brother and Richie were fighting, Lola was going to hit my brother with the pistol on the head, then there was a board, *I grabbed the board.*

WITNESS:

I told Lola not to move, and she stopped; at that moment Richie bit my brother and my brother because of the pain let him loose, when *he was left loose he went towards Lola to take the pistol away from her.*

PROSECUTING ATTORNEY RUIZ:

Who took the pistol away from Lola?

Richie, then I and my brother ran behind the car . . . Ah!

. . . which was *parked in front of Richie's house carport*; while running, Richie fired the first shot at us, the first detonation with the revolver, with the pistol.

He shot then there?

Yes, sir.

What did you do?

When I heard the detonation I ran along the San Tomás Hill.

And the car?

I left it there.

What did you do after that?

WITNESS:

Then I arrived at my house and from there I went to the police station; I notified the police station, then the one who took the steps was policeman Mateo. [p. 26 to 30.]

.   .   .   .   .   .   .

PROSECUTING ATTORNEY RUIZ:

Witness, when you received the impact that you say, when you heard those shots, where were you?

WITNESS:

I was . . . that is, while we were there and he went towards Lola who *had the pistol we were in front of the house, in the alley.*

Was it a street?

*It was the street already.*

Do public cars go along there?

Yes, sir.

What street was that?

Well, I do not know the name.

Nothing more." (Page 32.) (Italics ours.)

Whether an inference based on a proven fact establishes defendant's guilt is not involved herein. Rather what is involved is the interpretation of a witness' testimony in that part where he places defendant-appellant with a pistol in his hands.

It seems that at the time when defendant took out the pistol, aimed at Francisco Figueroa with it, and with the other hand grabbed him by the neck and hit him on the neck, they were in appellant's house because the witness testified that when he saw what he did, ". . . I ran to the street, I and my brother . . . ." The witness tells then that appellant asked him to fight with their fists and when the witness was getting ready to fight with the fists, defendant grabbed a piece of stick to hit him with it and that meanwhile, defendant had given Lola the pistol. Where was Lola when defendant gave her the pistol? The witness did not tell it. What he says is that afterwards defendant and the witness' brother became entangled in a fight and that when defendant bit his brother, the latter let him go and the former went towards Lola taking the pistol away from her. Neither does the evidence indicate the place where Lola was at that time. The witness continues reciting that when defendant (Richie) took the pistol away from Lola, he and his brother ran behind the car which was parked in front of the garage of Richie's house and that while running Richie fired at them the first shot. The prosecuting attorney asked the witness where he was when Richie fired the shots, answering "I was . . . that is, while we were there and he went towards Lola who had the pistol *we were* in front of the house, in the alley . . . . It was the street already." Who were in the alley, only the Figueroa brothers or they and defendant also? The testimony may be construed in the sense that all of them were there and that therefore defendant carried the pistol on a thoroughfare; but with the same force of persuasion it may be construed that only the Figueroa brothers were the ones on the thoroughfare and not defendant, who could have fired the shots from the perimeter of his property, in which case he would not have incurred the illegal act of carrying a firearm. The testimony which we have commented on being subject to two interpretations which may be likewise true, to adopt the one prejudicial

to defendant and to reject the one which is favorable to him certainly does not determine his guilt beyond a reasonable doubt. For that reason the judgment against him should not prevail. The evidence for the defense in no way helped to strengthen in that particular the evidence for the prosecution.

The evidence is sufficient at law to support the judgment in the case of violation of § 6 of the Weapons Law and should not be altered. However, as we did in the case of *People* v. *Ángel Sánchez Medina*, CR-69-139, judgment of May 2, 1970, we will apply the provisions of Acts Nos. 59 and 61 of June 23, 1969 and will reduce the sentence to 1 year in jail.

For the reasons stated the judgment, in the case of violation of § 8 of the Weapons Law, will be reversed and defendant-appellant will be acquitted, and as to the violation of § 6 of said Act, the judgment appealed from will be modified reducing it to 1 year in jail and thus modified it will be affirmed.